UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Claudia MELENDREZ,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>ALL KIDS ACADEMY, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 22-cv-1725-AGS-DDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF 4)** |

Plaintiff sued her employer for discrimination, harassment, retaliation, and related claims. The employer moves to dismiss.

## BACKGROUND[1]

Since 2009, plaintiff Claudia Melendrez has worked as a "floater teacher" for defendant All Kids Academy. (ECF 1-3, at 4.) For over a decade, All Kids was aware that Melendrez has "partial hearing loss and difficulty hearing faint sounds." (*Id*.) According to Melendrez, this condition never affected her performance, and it only became an issue after she reported misconduct by another teacher. (*See id*. at 4–5.)

Specifically, on February 17, 2022, Melendrez observed and promptly reported that a primary teacher "put[] her foot on a child's neck." (ECF 1-3, at 4.) Due to this incident, California's Department of Social Services issued a "Type B citation" to the facility. (*Id*.) Thereafter, Melendrez alleges that she was subjected to a series of "false reports," constant monitoring, and unfair job requirements. (*See id*. at 5.)

On March 11, for example, Human Resources Director Clark Carlson told Melendrez "that she could not return to work without hearing aids." (ECF 1-3, at 5.) When she promptly got them, however, she was still barred from working. In fact, on March 18

---

[1] For motion-to-dismiss purposes, this Court accepts "the factual allegations in the complaint as true" and construes them "in the light most favorable to the plaintiff." *GP Vincent II v. Est. of Beard*, 68 F.4th 508, 514 (9th Cir. 2023).

the facility director initially sent her home, saying that Melendrez "needed a hearing test." (*Id*. at 6.) Also, HR Director Carlson requested a doctor's note "explaining her hearing test results" and required her to "use sick leave" for the time she was kept home. (*Id*.)

Later that day, Melendrez was allowed to return to meet with Executive Director Yolanda Perez. (ECF 1-3, at 6.) Melendrez detailed her unfair treatment since reporting the teacher who put a "foot on a child's neck." (*Id*.) Perez assured her that she would not be charged sick days and would be paid for her forced stay at home as administrative leave. (*Id*.) But Melendrez's problems continued after this meeting, including being "continuously observed" and forbidden from being "alone with the children." (*Id*. at 6–7.)

A few weeks later, on April 4, an associate teacher admonished Melendrez for using her cell phone while "minding children during nap time," after Melendrez "glanced at her phone" to see if she had any texts about her sister who was in the hospital. (ECF 1-3, at 7.) Another supervisor told Melendrez to lock up her phone, while failing to ask a nearby teacher who "was using her personal laptop and cell phone" to do the same. (*Id*.)

Then, on April 19, 2022, All Kids fired Melendrez "due to her use of a cell phone in the classroom." (ECF 1-3, at 7.) But six days later, All Kids' "Board of Directors reversed the decision, reinstating [Melendrez's] employment." (*Id*. at 8.) HR Director Carlson nonetheless "issued her a warning about cell phone use and required her to sign it." (*Id*.)

Her reinstatement didn't last long. On June 10, Melendrez was watching children during "snack time" when she stopped a child from pulling out cords attached to a screen. (ECF 1-3, at 9.) The chastened child, who was known for frequent "tantrums," "grabbed" her arm and "lunged" at her. (*Id*.) Melendrez walked away to let him calm down, but the child told the primary teacher that Melendrez "hit him." (*Id*.) Although that teacher's back was turned during the incident, she did not ask Melendrez about it and instead reported it to the center's director. After interviewing everyone, the director told Melendrez that the child said she "pushed" him and that the reporting teacher "corroborated that story." (*Id*.)

Finally, on June 23, 2022, All Kids again discharged Melendrez, noting that she had "pushed" and "yelled at" a child. (ECF 1-3, at 9.)

<div style="text-align:center">**DISCUSSION**</div>

All Kids moves to dismiss the complaint for failing to state a claim. To survive such a motion, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6). Plausibility requires more than mere "conclusions" or a "formulaic recitation" of elements; it must be based on "factual allegations" that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

**A.     Whistleblower Retaliation (Claim 1)**

A whistleblower-retaliation claim under California Labor Code section 1102.5(b) involves a two-step burden-shifting process. *See Lawson v. PPG Architectural Finishes, Inc.*, 503 P.3d 659, 660, 663 (Cal. 2022). All Kids attacks both steps: It argues that Melendrez cannot establish a prima facie retaliation case and—even if she could—that it had a good-faith reason to fire her.

**1.  *Prima Facie Case***

To establish a prima facie case, plaintiffs must show that (1) they "engaged in a protected activity" (whistleblowing), (2) their employer subjected them to "an adverse employment action," and (3) "there is a causal link between the two." *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 575 (9th Cir. 2022). No one contests the first point—that Melendrez engaged in protected whistleblowing when she reported possible child abuse. *See* Cal. Lab. Code § 1102.5(b) (shielding disclosures of any "violation of a state or federal statute"); Cal. Penal Code § 273a (child-abuse statute). But the next two elements are in dispute.

The crux of All Kids' argument is that "the four-month time gap" between Melendrez's whistleblowing and termination cannot support an inference of "retaliatory causation." (ECF 4-1, at 4.) There are two flaws with this reasoning: All Kids incorrectly assumes that Melendrez's June 23, 2022 firing is the only relevant adverse employment action here and that the only indication of retaliatory motive is the timing.

In its analysis, All Kids presumably ignores Melendrez's earlier April 19, 2022 discharge because she was reinstated within a week. A "termination" is "an adverse employment action." *Wilson v. Cable News Network, Inc.*, 444 P.3d 706, 713 (Cal. 2019). And it remains so, for purposes of retaliation, even "if the employee is later reinstated." *See Alvarez v. Lifetouch Portrait Studios, Inc.*, Nos. B286910, B289910, 2020 WL 61989, at *15 (Cal. Ct. App. Jan. 6, 2020) (analyzing retaliation under the Fair Employment and Housing Act); *see also Fay v. Costco Wholesale Corp.*, No. EDCV 10-00834 DDP (DTBx), 2012 WL 683176, at *4 (C.D. Cal. Mar. 2, 2012) (noting that "the same standard governs" the analysis of an "adverse employment action" for whistleblower retaliation under Cal. Lab. Code § 1102.5 and FEHA retaliation); *cf. Aichele v. Blue Elephant Holdings, LLC*, 292 F. Supp. 3d 1104, 1111–12 (D. Or. 2017) (holding that a "termination . . . rescinded less than 24 hours later" without "any economic loss" was still an "adverse employment action[]" for retaliation under Title VII and Oregon law). So, Melendrez's discharges *both* qualify as adverse actions,[2] and the first one clocked in only two months after her whistleblowing. (*See* ECF 1-3, at 4 (February 17 report); *id.* at 7 (April 19 termination)).

The question then is whether this two-month gap and any other allegations establish causation. For the required "causal link," a plaintiff must prove that retaliation "was a substantial or motivating factor" in the "adverse employment actions." *See Sherman v. Pepperidge Farm, Inc.*, No. 8:22-cv-01781-JWH-ADS, 2023 WL 5207458, at *7–8 (C.D. Cal. Apr. 28, 2023). This may be shown circumstantially, such as by "closeness in time" or "a pattern of conduct consistent with a retaliatory intent." *Hawkins v. City of L.A.*, 252 Cal. Rptr. 3d 849, 856 (Ct. App. 2019).

---

[2] As more adverse actions would not change the analysis, the Court need not decide whether the disciplinary warning or any other acts count as adverse employment actions. *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) ("A warning letter or negative review also can be considered an adverse employment action.").

4

Melendrez offers both types of circumstantial cues. The two-month span between whistleblowing and the first termination offers some support for causation. Of course, if a plaintiff's prima facie case relies on "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action," those events must be "very close" in time. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (noting cases that found "3-month" and "4-month" periods insufficient to establish causality). But even a period of "three to eight months is easily within a time range that can support an inference of retaliation," in some circumstances. *Flores v. City of Westminster*, 873 F.3d 739, 750 (9th Cir. 2017); *see also Hawkins*, 252 Cal. Rptr. 3d at 856 (finding retaliatory causation based solely on "proximity in time" when plaintiffs were fired between 6 and 16 months after their whistleblowing and one to two months after the end of the formal investigation it prompted).

And Melendrez's case goes well beyond suspicious timing. She alleges that her child-abuse report had negative consequences for All Kids: it received a citation from the Department of Social Services. (ECF 1-3, at 4.) Immediately afterwards, Melendrez claims that she began suffering nearly daily indignities until her first firing—that is, constant and unwarranted monitoring, false reports of misconduct, unfair discipline, attempts to wrongly dock her sick leave, inappropriate queries and requirements regarding hearing aids, and improper exclusions from work. (*See generally id*. at 5–7.) This pattern of conduct—over a brief two-month period—makes out a prima facie case that her whistleblowing was a motivating factor in her termination.

### 2. *Employer's Same-Decision Defense*

Once a prima facie case is established, the burden shifts to the employer to demonstrate a "same-decision defense." *Lawson*, 503 P.3d at 663. Specifically, it must prove "by clear and convincing evidence that"—regardless of any whistleblowing—"it would have taken the same action for legitimate, independent reasons." *Id.* at 660 (cleaned up); *see also id*. at 663. All Kids' sole argument in this regard is that it had reasonable grounds to believe that Melendrez assaulted a child—and to fire her for this misconduct—

even if that belief was mistaken. (*See* ECF 4-1, at 4–6.) But that cannot explain the first firing of Melendrez on April 19, 2022, because this alleged assault did not happen until two months later, on June 10. (*See* ECF 1-3, at 8–9.) So, Melendrez's whistleblower-retaliation claim can go forward as to the April 19 firing.

As for the June 23 termination, the Court must decide if Melendrez has "plead[ed] herself out of court." *See Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997). In other words, the question is: Has Melendrez "pleaded facts" that sew up the same-decision defense so securely that she "cannot prevail"? *See id*. No, she can still plausibly succeed. Although the child-abuse report against Melendrez aids All Kids' defense, that defense must be proven to a clear-and-convincing standard, and Melendrez can undercut it by demonstrating pretext. Specifically, in February 2022 Melendrez reported another teacher for "putting her foot on a child's neck," but that teacher returned to work within a week. (ECF 1-3, at 4–5.) By contrast, just four months later All Kids fired Melendrez because she reportedly "pushed" and "yelled at" a child. (*Id*. at 9.) In the light most favorable to Melendrez, this pretext showing saves her retaliation claim as to the June 23 firing. *See Buhl v. Abbott Labs.*, 817 F. App'x 408, 410–11 (9th Cir. 2020) (noting that pretext may be shown by identifying "any similarly situated employee who was treated more favorably").

**B.     FEHA Discrimination (Claim 2) and Wrongful Termination (Claim 6)**

For Melendrez's claims of disability-related discrimination and wrongful termination under California's Fair Employment and Housing Act, the Court must apply the *McDonnell Douglas* "three-step burden-shifting test." *See Alamillo v. BNSF Ry. Co.*, 869 F.3d 916, 920 (9th Cir. 2017); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); Cal. Gov't Code § 12940(a) (FEHA discrimination and wrongful termination). First, "plaintiff bears the burden of establishing a prima facie case of discrimination [or wrongful termination] based upon physical disability." *See Alamillo*, 869 F.3d at 920. Second, after a prima facie case is established, the burden "shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment

action." *Id*. If the employer does so, plaintiff must finally "offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated." *Id*.

### 1. *Prima Facie Case*

For a prima facie case of FEHA disability discrimination, plaintiffs must show that they: (1) "suffer[] from a disability," (2) are "otherwise qualified" for the job, and (3) were "subjected to adverse employment action because of [their] disability."[3] *Alamillo*, 869 F.3d at 920. An employer acts "because of" a disability "when the disability is a substantial motivating reason for the employer's decision to subject the employee to an adverse employment action." *Id*. All Kids challenges only the first and third elements.

First, All Kids disputes that Melendrez's "partial" hearing loss and "difficulty hearing faint sounds" qualifies as a disability under FEHA. (ECF 4-1, at 6–7.) All Kids relies on Melendrez's admission that her "hearing condition did not have any restriction or limitations on her performance." (*Id*.) As relevant here, FEHA defines a "physical disability" as a disorder or condition that (1) affects "special sense organs" and (2) "[l]imits a major life activity," such as "working." *Preston v. City of Carlsbad*, No. D072950, 2019 WL 395738, at *11 (Cal. Ct. App. Jan. 31, 2019) (quoting Cal. Gov't Code § 12926(m)(1)&(m)(1)(B)(iii)). Melendrez's "hearing loss" does not meet this standard, as she contends that it does not affect her performance and she never "request[ed] any accommodation" of it. *See Preston*, 2019 WL 395738, at *13 (analyzing FEHA hearing-loss discrimination claim).

But that does not end the analysis. Another way to satisfy the physical disability element is with a perceived disability. That is, plaintiff may show that she was "regarded

---

[3] For wrongful termination due to a disability, the first two elements are the same, but the third element is that plaintiffs: (3) were subjected "to discharge . . . from employment" because of their disability. *See* Cal. Gov't Code § 12940(a).

7


or treated by the employer" as having a "physical condition that makes achievement of a major life activity difficult." *See* Cal. Gov't Code § 12926(m)(4). Although the complaint does not expressly mention this alternative theory, Melendrez now argues that All Kids treated her as though she had a disability and "perceived" that it affected her "ability to perform her job functions." (ECF 6, at 16.) The complaint offers some support for this argument. Melendrez alleges that All Kids told her that "she could not return to work until she purchased hearing aids." (ECF 1-3, at 5.) And even after she did so, she was again barred from work on the ground that she still "needed a hearing test." (*Id*. at 6.) In the light most favorable to Melendrez, All Kids believed her hearing condition made it "difficult" to accomplish her job. So, she plausibly alleges a perceived disability under FEHA.

Yet All Kids protests that it never perceived Melendrez as disabled. At most, it believed Melendrez had "a minor hearing impairment that could be excuse[d] by a doctor or else neutralized with a small hearing aid device." (ECF 7, at 7–8; *see also* ECF 1-3, at 5–6.) For legal support, All Kids points to the ADA employment-discrimination case of *Tubens v. Police Department of City of New York*, 48 F. Supp. 2d 412 (S.D.N.Y. 1999), in which the defense also argued that it perceived plaintiff as physically "impaired," but not "disabled." *Id*. at 417. But *Tubens* was interpreting the meaning of "disability" in the Americans with Disabilities Act, which requires that the disabling impairment "substantially limit[]" a major life activity. *Id*. at 416 (citing 42 U.S.C. § 12102). By contrast, a "physical disability under the FEHA does *not* require the federal test's *substantial limitation* of a major life activity." *Colmenares v. Braemar Country Club, Inc.*, 63 P.3d 220, 226 (Cal. 2003). Thus, cases interpreting the ADA, like *Tubens*, are "not persuasive where the statutory language of the FEHA differs markedly from the ADA." *See Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 83 Cal. Rptr. 3d 190, 211 (Ct. App. 2008); *see also Bryan v. United Parcel Serv., Inc.*, 307 F. Supp. 2d 1108, 1112 (N.D. Cal. 2004) (explaining that FEHA affords "greater protection for claims of disability than the federal ADA" and holding that monocular plaintiffs were "disabled under FEHA," though not under the ADA).

Next, All Kids maintains that Melendrez falls short on the final element—a disability-related adverse employment action. All Kids argues convincingly that being "barred" from the classroom with full pay and being "constantly monitored" by an employer do not rise to the level of an adverse employment action. (*See* ECF 7, at 8.) But Melendrez also contends that her "perceived disability was a substantial motivating reason" for her termination. (*See* ECF 6, at 16; *see also* ECF 1-3, at 11, 14.) And the complaint includes several allegations in aid of this theory. Starting in mid-March 2022, Melendrez was barred from work until she bought hearing aids and took a hearing test; told she needed to obtain a doctor's note "explaining her hearing test results"; informed that she would be charged "sick leave" for these forced absences; and then, upon her return to school, was "continuously observed" and never "left alone with the students." (ECF 1-3, at 5–7.) All Kids then fired and reinstated her in April 2022, and finally fired her permanently in June 2022. (*Id.* at 7, 9.) Both terminations qualify as adverse employment actions, regardless of reinstatement. *See Muhammad v. United Airlines, Inc.*, No. CV 07-6474 CAS (CWX), 2008 WL 11336667, at *4 (C.D. Cal. Dec. 8, 2008) (holding that plaintiff's termination and reinstatement "with full back pay" could qualify as an "adverse employment action" in a FEHA discrimination case); *Dumas v. New United Motor Mfg. Inc.*, No. C 05-4702 PJH, 2007 WL 1223806, at *8 (N.D. Cal. Apr. 24, 2007) ("Defendant's reinstatement of plaintiff with back pay and seniority does not serve to eliminate the termination as an adverse [employment] action" for FEHA discrimination.).

On the other hand, All Kids has "been aware of" Melendrez's "hearing condition for over ten years." (ECF 1-3, at 4.) At first blush, this seems to undermine the allegation of hearing-related discrimination (while bolstering the retaliation claim, plausibly suggesting that the hearing-aid issue was a smokescreen). But Melendrez need not show that All Kids writ large is hostile to the hearing-impaired; she must only prove that the alleged bad actors—Perez and Carlson—are. (*See* ECF 6, at 21.) And it is unclear how long Perez and Carlson have been employed there or how often they interacted with Melendrez previously. In the light most favorable to Melendrez, the Court must presume that this was one of their

first opportunities to discriminate against her. Thus, the timing and sequence of these events plausibly suggest that she was discharged due to disability-related animus. Her FEHA discrimination and wrongful termination claims survive.

### 2. *Shifted Burdens*

Although the burden now shifts to All Kids to offer a legitimate reason for firing Melendrez, the complaint itself sets forth an explanation. Her April 2022 termination was "due to her use of [a] cell phone in the classroom" (ECF 1-3, at 7), and her June 2022 discharge arose after two people—a teacher and student—reported that Melendrez physically "pushed" the child (*id*. at 9). The cell-phone-related rationale is the more debatable reason, especially because the complaint does not mention any school rules regarding cell phones. But the Court need not resolve that issue.

Even if All Kids succeeds in shifting the burden back to plaintiff to prove intentional discrimination or pretext, other allegations in the complaint plausibly meet her final burden. On the same occasion that Melendrez was admonished for using her phone in the classroom, another teacher "was using her personal laptop and cell phone," yet was never reprimanded. (ECF 1-3, at 7.) As for the child-abuse rationale, as discussed earlier, there are ample pretext allegations, given the relatively charitable treatment of the teacher Melendrez accused of "putting her foot on a child's neck." (*See* ECF 1-3, at 4–5.) "A plaintiff may raise a triable issue of pretext through comparative evidence that the employer treated . . . similarly situated employees more favorably than the plaintiff." *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011).

As a result, the Court denies the motion to dismiss the FEHA claims for discrimination and wrongful termination based on a disability (counts 2 and 6).

### C. FEHA Disability Harassment (Claim 3)

In claim 3, Melendrez charges All Kids with disability harassment under FEHA based on a hostile work environment. In this context, "harassment" means "offensive comments or other abusive conduct" that is "so objectively severe or pervasive as to create a hostile or abusive working environment." *Doe v. Dep't of Corr. & Rehab.*,

255 Cal. Rptr. 3d 910, 923 (Ct. App. 2019) (cleaned up). To establish a prima facie case of such harassment, Melendrez must show that: "(1) she is a member of a protected class [due to a physical or mental disability]; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are liable for the harassment." *See Galvan v. Dameron Hosp. Ass'n*, 250 Cal. Rptr. 3d 16, 28 (Ct. App. 2019); *see also* Cal. Gov't Code § 12940(j).

Melendrez relies on the following to show All Kids' harassment: "requiring Plaintiff to wear hearing aids, have a hearing test conducted, and consistently monitoring her until she completed a hearing test." (ECF 6, at 17.) These are not the sort of "offensive comments" or "abusive conduct" that support such a claim. Harassment consists exclusively "of conduct outside the scope of necessary job performance," such as "verbal epithets," "derogatory posters or cartoons," "unwanted sexual advances," and the like. *Janken v. GM Hughes Elecs.*, 53 Cal. Rptr. 2d 741, 745 (Ct. App. 1996). Melendrez's allegations, on the other hand, belong to the category of decisions that could conceivably be "necessary to performance of a supervisor's job." *Id.* In other words, a manager may lawfully require an employee to accept greater supervision or to undergo hearing testing, in some circumstances. *See Quinn v. City of L.A.*, 100 Cal. Rptr. 2d 914, 921 (Ct. App. 2000) (holding that police department's "requirement that an applicant possess a certain level of hearing appears eminently reasonable" and directing judgment against plaintiff who failed a "sound localization test"). Of course, an employer might impose those same job demands unfairly due to some prohibited animus, but that amounts to a claim of "discrimination, not harassment." *See Janken*, 53 Cal. Rptr. 2d at 746.

Thus, Melendrez's disability-harassment claim must be dismissed.

**D.    FEHA Retaliation (Claim 4)**

All Kids raises similar arguments against the retaliation claim under FEHA (claim 4) as for whistleblower retaliation (claim 1)—that is, it contends that Melendrez has not

pleaded a prima facie case and cannot overcome its good-faith defense. But the legal analysis is somewhat different. Unlike whistleblower retaliation, FEHA retaliation claims call for the "well-worn, but meaningfully different," three-step *McDonnell Douglas* burden-shifting framework. *See Lawson*, 503 P.3d at 660, 662.

The elements of a prima facie case are the same for both FEHA and whistleblower retaliation, but the relevant "protected activity" is different. *Compare Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1130 (Cal. 2005) (FEHA retaliation under Cal. Gov't Code § 12940(h)) *with Moreno*, 29 F.4th at 575 (whistleblower retaliation under Cal. Lab. Code § 1102.5(b)). Under FEHA, an employee may not be discharged or discriminated against for opposing "any practices forbidden under" FEHA or for filing "a complaint" under FEHA. Cal. Gov't Code § 12940(h).

All Kids contends that Melendrez has not alleged that she engaged in any such "protected activities." (ECF 4-1, at 4 n.1.) Melendrez responds that her FEHA-protected activity was complaining to the executive director about "the harassment based on her hearing aids." (*See* ECF 6, at 18.) An "employee's formal or informal complaint to a supervisor regarding unlawful discrimination . . . may constitute retaliation" under FEHA. *Dokes v. Safeway, Inc.*, No. 2:15–cv–01157–TLN–DB, 2018 WL 1518562, at *10 (E.D. Cal. Mar. 28, 2018). So, Melendrez has pleaded a protected activity. In addition, she has sufficiently alleged a causal link between that protected activity and an adverse employment action: she complained to the executive director on March 18, 2022; was constantly monitored for weeks thereafter; fired on April 19, 2022 (and later reinstated); and fired for the last time on June 23, 2022. (ECF 1-3, at 6.) These facts make out a prima facie case.

The burden now shifts to All Kids to offer legitimate, nonretaliatory reasons for terminating Melendrez. The Court's burden-shifting analysis here mirrors the discussion for the FEHA discrimination claim. *See supra* section B.2. Once again, even if the Court accepts All Kids' good-faith explanations, Melendrez plausibly alleges that they are pretextual. So, the FEHA retaliation claim remains.

### E. FEHA Failure to Prevent Harassment and Retaliation (Claim 5)

In claim 5, Melendrez accuses All Kids of failing to prevent harassment and retaliation, in violation of California Government Code section 12940(k). (ECF 1-3, at 13–14.) All Kids' lone argument against this cause of action is that a failure-to-prevent claim cannot be based on a deficient underlying charge of harassment or retaliation. (*See* ECF 4-1, at 8); *see also Thompson v. City of Monrovia*, 112 Cal. Rptr. 3d 377, 393 (Ct. App. 2010) (holding that an "employee has no cause of action for a failure to investigate unlawful harassment or retaliation, unless actionable misconduct occurred"). The Court concurs with that legal principle, but it dictates only a partial dismissal here. The harassment and failure-to-prevent-harassment claims perish together. *See supra* section C. But Melendrez adequately pleaded retaliation, so she may pursue a claim for failing to prevent retaliation.

### F. Negligent Supervision (Claim 7)

All Kids moves to dismiss the negligent-supervision claim because Melendrez "fails to identify *which employees* were a threat" and fails to allege "that employees under supervision had a known past history of specific unlawful conduct." (ECF 4-1, at 9; *see also* ECF 1-3, at 15 (claim 7: specifically alleging negligent supervision of "unlawful practices" and "unlawful conduct").) To "establish negligent supervision, a plaintiff must show that a person in a supervisorial position over the actor had prior knowledge of the actor's propensity to do the bad act." *Z.V. v. Cty. of Riverside*, 189 Cal. Rptr. 3d 570, 581 (Ct. App. 2015). Although Melendrez doesn't specify anyone by name in the claim itself (*see* ECF 1-3, at 15), she now identifies the relevant supervisor as "Defendant's board" and the bad actors as "Executive Director Perez" and "Human Resources Director Carlson" (ECF 6, at 21).

Yet the complaint is devoid of facts linking these people to the relevant negligent-supervision elements. (*See* ECF 1-3, at 15.) In her responsive papers, Melendrez argues that All Kids' board had prior knowledge of misconduct "because a cursory look at the termination report revealed its unfounded, disparaging, and retaliatory nature." (ECF 6,

at 21.) But these facts appear nowhere in the complaint. In fact, the complaint's entire discussion of the board is two sentences: "Plaintiff appealed her termination which was presented to Defendant's Board of Directors on Monday, April 25, 2022. The Defendant's Board of Directors reversed the decision, reinstating Plaintiff's employment." (ECF 1-3, at 8.) The "termination report" is never mentioned. And there are no allegations whatsoever that the board knew or should have known that Perez or Carlson, specifically, were engaged in unlawful practices.

Melendrez failed to state a claim of negligent supervision, so claim 7 is dismissed.

**G.   Leave to Amend**

Melendrez seeks leave to amend for any dismissed claims, and All Kids cursorily opposes that request. (*See* ECF 6, at 26; ECF 7, at 11.) Unless the defense shows that a "defective complaint" cannot "be cured," a "plaintiff is ordinarily entitled to amend the complaint before the action is dismissed." *See Arimilli v. Rezendes*, No. CV-21-00345-PHX-GMS, 2023 WL 2734456, at *7 (D. Ariz. Mar. 31, 2023). All Kids has not shown that amendment would be futile or otherwise impermissible. So, Melendrez may amend.

## CONCLUSION

All Kids' motion to dismiss is **GRANTED** in part as follows:

1. Claim 3 (disability harassment) is **DISMISSED**.

2. Claim 5 (failure to prevent harassment and retaliation) is **DISMISSED IN PART**. The failure-to-prevent-retaliation claim survives. The Court dismisses only the cause of action for failure to prevent *harassment*.

3. Claim 7 (negligent supervision) is **DISMISSED**.

The motion is otherwise **DENIED**. Melendrez has leave to amend any dismissed claims. By October 23, 2023, Melendrez must file any amended complaint.

Dated:  September 25, 2023

Hon. Andrew G. Schopler
United States District Judge